**Joel SAENZ et al., Appellants,**

v.

**LOWER RIO GRANDE VALLEY CHAMBER OF COMMERCE, Appellee.**

**No. 13048.**

Court of Civil Appeals of Texas.

San Antonio.

Nov. 28, 1956.

Rehearing Denied Dec. 31, 1956.

Gerald Weatherly, Laredo, for appellants.

Strickland, Wilkins, Hall & Mills, Mission, for appellee.

## W. O. MURRAY, Chief Justice.

This suit was instituted by Joel Saenz and thirty-seven other persons against Lower Rio Grande Valley Chamber of Commerce, a corporation, seeking to recover damages for the publication of an alleged libelous statement by it. The defendant's motion for a summary judgment was granted and judgment rendered that plaintiffs take nothing, from which judgment they have prosecuted this appeal.

Appellants' first point is to the effect that the court erred in hearing the motion for summary judgment before passing on their motion, duly filed, for a change of venue based upon the ground of local prejudice. Appellants say that the only proper thing for the trial court to have done was to give them a hearing upon their motion for a change of venue and, if found good, to have changed the venue without any other proceedings being had in Hidalgo County. Appellants made demand for a jury and, of course, if they could have made a proper showing of prejudice existing in Hidalgo County, the county of suit, the court no doubt would have transferred the case because it would be presumed that they could not get a fair and impartial jury in such a county. But the fact that there is prejudice existing among the citizens of a county does not establish the fact that the judge is disqualified to hear any phases whatever of the case. A motion for summary judgment is addressed alone to the trial judge, and there would be no practical reason for his holding a hearing on the motion for change of venue and transferring the cause to some other county, if the case is to be disposed of by summary judgment and never to be heard otherwise. See Carpenter v. Kone, 54 Tex.Civ.App. 264, 118 S.W. 203.

The trial judge heard and granted the motion of appellee for a summary judgment. If the motion was properly granted, and a summary judgment properly rendered, the motion for a change of venue was immaterial. We do not find any cases passing on this point, but it seems to us, that, since it is always desirable to bring litigation to an end as rapidly as possible, with the least expense, consistent with justice, equity and right, any procedure other than that which was followed herein would be contrary to the best interest of all parties.

It is true that appellee had not replied to the motion for a change of venue, but there is nothing in the rules which would require appellee to do so prior to the time the motion is called up for action.

Appellants next contend that the allegations of their petition should be taken as true upon the summary judgment hearing, because appellee had withdrawn its answer. We do not agree. It is true that appellee had filed a motion for leave to withdraw its answer and to file a new answer, which motion was granted, but appellee had not in fact withdrawn its motion nor filed a new answer, unless the filing of the motion for a summary judgment could be considered the filing of a new answer. Appellants cite the following Federal cases on the proposition that unless the defendant has answered before asking for a summary judgment, the allegations in plaintiffs' petition are to be taken as true upon such a hearing: Rogers v. Girard Trust Co., 6 Cir., 1947, 159 F.2d 239, 241–242; Doehler Metal Furniture Co. v. U. S., 2 Cir., 149 F.2d 130, 135; Weisser v. Mursam Shoe Corp., 2 Cir., 127 F. 2d 344, 145 A.L.R. 467; Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101; Farrall v. District of Columbia Amateur Athletic Union, 80 U.S.App.D.C. 396, 153 F.2d 647.

These authorities should not be followed in this State, because there is a difference between Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. and Rule 166–A of the Texas Rules of Civil Procedure, though both rules relate to summary judgments. The following notation found in Vernon's Annotated Texas Rules of Civil Procedure, following Rule 166–A, explains the difference between the two rules:

"Source: Federal Rule 56, as originally promulgated, except that the following wording in subdivision (a) has been eliminated: 'pleading in answer thereto has been served'; and in its place the following language has been substituted: 'adverse party has appeared or answered'."

Here, unquestionably, appellee had appeared by filing its first answer and by asking leave to withdraw it.

Appellee supported its motion for summary judgment by a number of affidavits, showing that the only statement it issued concerning the strike, which was being relied on by appellants, was a letter reading as follows:

"Lower Rio Grande Valley
Chamber of Commerce
General Offices, Telephones 532—L.D.13
Weslaco, Texas

"To the Citizens of the Lower Rio Grande Valley and Members of the Valley Chamber of Commerce

"Gentlemen:

"This is to call your attention to the fact that there is now an effort being made to bring our Valley economy under the control of the Union.

"If Valley businessmen want to prevent a systematic unionization of all phases of our Valley economy, certain definite steps should be undertaken. Compliment the men who are staying at the wheels of the busses of the Valley Transit Company. Give them a pat on the back. So far, all they are receiving is jeers and unkind remarks.

"It is felt by those people close to Union methods that if this effort is successful, other organizations will be contacted immediately and we will find grocery clerks, drivers of bread trucks, and like businesses on strike, and even an effort to organize the farm labor groups.

"It is up to us to support the free enterprise system of our great nation and resist efforts to organize our Rio Grande Valley in this manner. Your cooperation and support in this matter is money in your pocket!

> "Very sincerely yours,
> (Signed) Jack H. Drake
> "JHD js Executive Vice President"

 This letter simply is not libelous and it cannot be made so by alleging innuendoes. Appellants did not come forth with affidavits or other proof to contradict the affidavits filed by appellee. It is true that Jack H. Drake, who was the Executive Vice-President of appellee, after he had read this letter over the telephone to one Thomas Maccabe, the Valley Representative of United Press, a nationwide newspaper reporting service, made some remarks of his own that might be regarded as libelous, under all the circumstances, but there are affidavits to the effect that appellee did not authorize Drake to make these remarks. In Cyrus W. Scott Mfg. Co. v. Millis, 67 S.W.2d 885, 887, Tex. Civ.App., the Court said:

> "The slander charged was words spoken by an employee of the defendant corporation, and in such case it is necessary to allege and prove that such act of the employee was authorized by the corporation or that it was ratified by it before it can be held liable for the words spoken."

Luquire Ins. Co. v. Parker, 241 Ala. 621, 4 So.2d 259; 150 A.L.R. 1341; World Oil Co. v. Hicks, Tex.Civ.App., 75 S.W.2d 905; Commercial Union Life Ins. Co. v. Moore, Tex.Civ.App., 160 S.W.2d 266.

There are two affidavits in the record by Maccabe, one filed by appellee and the other filed by appellants, and such latter affidavit is the only one filed by appellants in answer to appellee's motion for summary judgment. We will here copy the pertinent parts of this affidavit:

"Affidavit of Thomas Maccabe:

"State of Texas, County of Hidalgo:

"Thomas Maccabe, being first duly sworn, deposes as follows:

"'My name is Thomas Maccabe. I reside in Edinburg, Texas, and am a Valley Representative of United Press. I am over twenty-one (21) years of age, am of sound mind, have never been convicted of any crime or offense, and have personal knowledge of every statement herein made. I remember the occasion on Saturday, October 22, 1955, when a letter was released by Lower Rio Grande Valley Chamber of Commerce to "the citizens of the Lower Rio Grande Valley and members of the Valley Chamber of Commerce," over the signature of Jack H. Drake, Executive Vice President, and which is copied in plaintiffs' first amended original petition in Cause No. C–679 now pending in the 139th District Court of Hidalgo County, Texas, entitled Joel Saenz et al. v. Lower Rio Grande Valley Chamber of Commerce. United Press is a nation-wide newspaper reporting service which distributes news-stories and news-items to a large number of newspapers throughout the United States. United Press has been operating and giving this service continuously for at least several years.

"'October 22, 1955, when the above-mentioned letter was released by Lower Rio Grande Valley Chamber of Commerce, I called Jack Drake on the telephone and I copied such letter on my typewriter as the letter was dictated by Jack Drake. At the time, I told him I was copying the letter as he was reading or dictating it to me. I suppose he could hear my typewriter over the telephone as I typed.

" 'As I have already stated in a previous affidavit in this case, "After I had written down the text of the letter, I asked Jack Drake if he wanted to add any comment and Drake stated that the letter spoke for itself. We then talked for two or three minutes on the telephone and Drake stated to me that he was of the opinion that the methods being used by the bus drivers' Union were not those which such an organization should follow and that the Union should have gone about its campaign by holding an election or other democratic method. Drake stated to me that in his opinion 'this shows shades of the Port Arthur strike types.' This was the only reference made by Drake to Port Arthur." As I said in my previous affidavit, "I do not know if he was undertaking to speak for or on behalf of the Lower Rio Grande Valley Chamber of Commerce."

" 'As I said in my previous affidavit, "I do not recall if Jack Drake during the above-mentioned interview stated that the present strike of the bus drivers of the Valley Transit Company is the opening wedge in an effort to bring a systematic unionization of all phases of our Valley economy"; but, knowing (as I do) my usual care in reporting news-stories for United Press, and being shown the photostatic copy of the newspaper story about the matter which is attached hereto, and noting as I do that the newspaper story shows, enclosed in quotation marks, that Drake or the Chamber said that the strike or the occurrence is (or was) "the opening wedge in an effort to bring a systematic unionization of all phases of our Valley economy." I believe it is possible that Drake did say that to me at the time. My own copy of the United Press dispatch does not show that the phrase "the opening wedge in an effort to" was in a direct quotation. But, as I said in my previous affidavit, "I do not know if he was undertaking to speak for or on behalf of the Lower Rio Grande Valley Chamber of Commerce." At least he did say, as the letter says, "a systematic unionization of all phases of our Valley economy."

" '/s/ Thomas Maccabe' "

This affidavit fails to show that Drake was authorized to make such remarks, and other affidavits show positively that he was not.

Appellants' third point is as follows:

"Even considering on the merits the motion for summary judgment and the affidavits submitted, there is still a material fact issue for a jury, that could be materially affected by the jury's actually hearing and seeing the oral testimony and examination of the witnesses Thomas Maccabe and others, if only on the credibility of affiants, or the weight of the showings, or a mere ground of inference; and hence, for these reasons also, independently of other reasons, the Trial Court reversibly erred in granting the motion for summary judgment, and in thus denying appellants the duly and timely demanded jury trial."

Appellants do not contend that they personally know anything about the publishing of this alleged libel. The persons making the affidavits here are the only ones who know the facts concerning the matter. From their affidavits it is perfectly apparent that the only statement issued by appellee was the letter set forth above. The letter was to speak for itself and no one was authorized to issue any further statements on behalf of appellee.

■ Appellants say, in effect, even if these affidavits do reflect the above, they were entitled to have these witnesses brought before the court where they could be cross-examined and their demeanor observed by the court and jury. Section (f) of Rule 166–A, supra, provides that appellants under such circumstances can ask delay while they take the depositions of such witnesses, which they did not do in this case. King v. Rubinsky, Tex.Civ.App.,

241 S.W.2d 220. If appellants had taken the depositions of these witnesses and they had sworn under cross-examination the same thing they had sworn to their affidavits we could hardly expect that they would swear differently in open court. Even though their demeanor on the witness stand might be of the worst type, yet the appellants would not have any evidence to support their course of action. Demeanor alone is not positive evidence. A federal case very much in point is Dyer v. MacDougall, 2 Cir., 201 F.2d 265.

The judgment is affirmed.